IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Steve E. Miller, | ) Case No. 8:15-cv-02707-HMH-JDA |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Ms. Holly Scaturo, Director S.V.P. | ) |
| Treatment Program, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court on a motion for summary judgment filed by Defendant. [Doc. 23.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

This action was filed on July 13, 2015. [Doc. 1.] Defendant filed a motion for summary judgment on October 30, 2015. [Doc. 23.] On November 2, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised to respond to the motion and of the possible consequences if he failed to adequately respond. [Doc. 24.] Plaintiff filed a response in opposition to the motion on November 13, 2015 [Doc. 26], and Defendant filed a reply on November 19, 2015 [Doc. 28]. Accordingly, the motion is ripe for review.

## BACKGROUND[1]

Plaintiff appears to have been civilly committed pursuant to the South Carolina Sexually Violent Predator Act ("SVPA"), S.C. Code Ann. §§ 44-48-10 through 44-48-170, since 2007, and he is housed in the Edisto Unit. [Doc. 1 at 3.] Plaintiff alleges he cannot buy a television, hot pot, or reading lamp even if he earns the correct custody level (blue) because the rooms in the Edisto Unit do not have adequate power or cable connections. [*Id.*] He alleges the detainees in the Congaree Unit who are classified at the blue level can buy televisions and reading lamps because their rooms have power and cable connections. [*Id.* at 4.] Plaintiff also alleges that state prisoners, at any custody level and if they have sufficient funds, are permitted to purchase from the canteen a television, hot pot, and reading lamp. [*Id.* at 3.] He alleges he has a constitutional right to be treated with better living conditions than prisoners because he is a mental health detainee. [*Id.*] Finally, Plaintiff alleges forty-nine chairs are needed for the residents and staff, but there are only thirty-eight chairs, and there is no saving seats. [*Id.* at 4.] Further, the unit is "not set-up for the handi-capped resident(s)." [*Id.*] Plaintiff seeks injunctive relief for all rooms to be provided sufficient power and cable and for him to be permitted to purchase a television, hot pot, and reading lamp whether he is classified as a green or blue level. [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe her pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519,

---

[1]The facts included in this Background section are taken directly from Plaintiff's Complaint.

2

520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be

4

a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendant asserts she is entitled to summary judgment because (1) Plaintiff's Complaint fails to state a claim; (2) Defendant is entitled to Eleventh Amendment immunity;

6

(3) Defendant has not violated any of Plaintiff's constitutionally protected rights; (4) Plaintiff lacks standing to bring a claim regarding handicap accommodations[2]; (5) any claim regarding lockdowns of the Edisto Unit are duplicative of claims raised in another action[3]; (6) the doctrine of respondeat superior does not apply in § 1983 actions; (7) Defendant is entitled to qualified immunity; and (8) Plaintiff is not entitled to injunctive relief. [Doc. 23-2.]

**Eleventh Amendment Immunity**

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a

---

[2]"[A] litigant 'has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others.'" *Laird v. Tatum*, 408 U.S. 1, 13 n.7 (1972) (quoting *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166 (1972)). Plaintiff lacks standing to bring any claim regarding handicap accommodations because he has no handicap. [*See* Doc. 23-3 ¶ 16; *see also* Doc. 26-1 (Plaintiff's response in opposition, arguing only that another detainee has a handicap).]

[3]Although Plaintiff then proceeds to address lockdowns, he concedes in his response in opposition to the motion for summary judgment that he is not raising a claim regarding lockdowns in this case. [Doc. 26-1 at 4.]

result, to the extent Plaintiff has alleged claims against Defendant in her official capacity, those claims must be dismissed because Defendant is entitled to immunity pursuant to the Eleventh Amendment.

**Conditions Claims**

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed. *See Seling v. Young*, 531 U.S. 250, 265 (2001); *Youngberg*, 457 U.S. at 324. When deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. *Youngberg*, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. *Id.* at 322.

"A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee." *Treece v. McGill*, No. 3:08-3909-DCN-JRM, 2010 WL 3781695, at *4 (D.S.C. Sep. 21, 2010). A pretrial detainee's claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen.*

8

*Hosp.*, 463 U.S. 239, 244 (1983). In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To determine whether a prison official has violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). However, not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need;

9

and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)).

### *Property Claims*

Plaintiff has failed to establish that his constitutional rights were violated because he could not purchase a television, hot pot, or reading lamp. Defendant Holly Scaturo ("Scaturo"), Program Director of the Sexually Violent Predator Treatment Program ("SVPTP"), has averred that a resident is provided a copy of the Behavioral Management Policy and the Unit Privilege System when he enters the SVPTP program and that these policies lay out the behavior that is expected of residents, the purposes behind the policies,[4] and the criteria for each resident to reach the next behavior level. [Doc. 23-3 ¶ 4.] A resident enters the SVPTP on red level with respect to the privileges he is afforded.[5] [*Id.*; Doc. 23-5 at 1.] The resident may apply or re-apply for a level advancement with his case manager when he believes he meets the criteria needed to advance. [Doc. 23-3 ¶

---

[4]The purpose of the Behavioral Expectations Policy is as follows:

> To establish rules for residents regarding their behavior while they are within the [SVPTP]. These rules will help the residents with developing appropriate, pro-social behavior and decreasing/eliminating rule breaking behavior. Establishing behavioral expectations will also provide safety and security of residents, staff, and other visitors to the facility.

[Doc. 23-4 at 1.] The purpose of the Unit Privilege System is "to provide the resident opportunities to utilize skills in negotiating unit life and exercise decision-making skills that reflect progress in treatment." [Doc. 23-5 at 1.]

[5]The levels are red, green, and blue. [Docs. 23-3 ¶ 4; 23-5.] Each behavior level has certain privileges with each higher level obtaining additional privileges. [*Id.* ¶ 5.]

10

6.] The resident's treatment team reviews the criteria, and the treatment team supervisor makes a decision regarding whether the resident will advance to the next level. [*Id.*] Additionally, a resident can lose a level due to behavior infractions. [*Id.*]

Residents are not eligible to purchase a television until they reach blue level. [*Id.* ¶ 8; Doc. 23-5 at 3.] Plaintiff has never met the criteria for blue level. [*Id.* ¶ 7.] He applied for blue level in June 2015 but did not meet the requirements; therefore, his request was denied. [*Id.*] Because Plaintiff has never been on blue level, he has never qualified to purchase a television.[6] Moreover, Plaintiff has access to televisions in the milieu area. [*Id.* ¶ 11.] Plaintiff has failed to establish that not being allowed to purchase a television violated his constitutional rights. *See Treece v. S.C. Dep't of Mental Health*, No. 3:08-3909-DCN-JRM, 2010 WL 3781726, at *9 (D.S.C. Feb. 19, 2010) (finding that restrictions on a civil detainee's ability to possess property, including a battery operated television, bore a reasonable relation to the defendants' interest in maintaining security and safety and did not appear to be punitive), *Report and Recommendation adopted by Treece v. McGill*, 2010 WL 3781695 (D.S.C. Sep. 21, 2010); *see also Rawls v. Sundquist*, 113 F.3d 1235, at *1 (6th Cir. 1997) (unpublished table decision) ("There is no constitutional right to watch television.") (citing *Murphy v. Walker*, 51 F.3d 714, 718 n.8 (7th Cir. 1995)).

Scaturo also avers that no resident may purchase a hot pot or similar item because of safety precautions; however, each unit is provided two large coffee pots where residents

---

[6]The Court notes that the Unit Privilege System provides that, at the blue level, a resident "[m]ay purchase an approved television for room if in Congaree and available for purchase on canteen." [Doc. 23-5 at 3.] However, because Plaintiff has never reached blue level at all, he has never qualified for this privilege, and, as discussed below, Plaintiff fails to establish an equal protection claim regarding the difference in treatment between Plaintiff and residents on the Congaree Unit.

may obtain heated water for food or drinks. [Doc. 23-3 ¶ 10.] Additionally, all residents have access to microwaves. [*Id.*] Plaintiff has failed to establish that not being allowed to purchase a hot pot violated his constitutional rights. *See Ellis v. Pierce Cty., GA*, 415 F.App'x 215, 218 (11th Cir. 2011) (holding that a pretrial detainee's lack of access to hot water in his cell, denial of television, limited access to a telephone, and limited social time with others fell "far short of the sort of 'extreme deprivations' that are required to amount to clearly established unconstitutional conditions of confinement") (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004)).

Finally, Scaturo avers that residents on the Edisto Unit have ceiling lights in their rooms that they control. [Doc. 23-3 ¶ 9.] Plaintiff has failed to establish that not being allowed to purchase a reading lamp violated his constitutional rights. *See Treece*, 2010 WL 3781726, at *9 (finding that restrictions on a civil detainee's ability to possess property, including a lamp in his room, bore a reasonable relation to the defendants' interest in maintaining security and safety and did not appear to be punitive). Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's conditions claims regarding not being allowed to purchase a television, hot pot, or reading lamp.[7]

### *Seating Claims*

Similarly, Plaintiff has failed to establish that his constitutional rights were violated because there are not enough chairs for all residents and staff and saving seats is not

---

[7]To the extent Plaintiff alleges his constitutional rights have been violated because his room does not have an electrical outlet or cable connection, the Court notes he raises such a claim only with respect to his not being allowed to purchase a television, hot pot, or reading lamp. As discussed, not being allowed to purchase these items does not violate Plaintiff's constitutional rights.

12

allowed. Scaturo has averred that there are 47 chairs located on the Edisto Unit, B side, where Plaintiff is located. [Doc. 23-3 ¶ 15.] Additionally, there are fourteen stackable chairs located on the recreation yard that can be brought in if additional seating is needed. [*Id.*] Moreover, Scaturo has averred that the rule prohibiting residents from saving seats was created to help prevent confrontation and potential conflicts between residents. [*Id.* ¶ 14.] Plaintiff has failed to establish that his constitutional rights were violated because of insufficient seating or not being allowed to save seats. *Beese v. Liebe*, 51 F. App'x 979, 982 (7th Cir. 2002) (holding that a pretrial detainee's claim that he was confined during the daytime hours to a general room with inadequate seating was not a sufficiently serious deprivation). Thus, Defendant's motion for summary judgment should be granted with respect to this claim.

**Equal Protection Claim**

An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Once that is shown, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Plaintiff fails to establish an equal protection claim because he has offered no evidence to establish that any different treatment between Plaintiff and residents of the

Congaree Unit was the result of intentional or purposeful discrimination.[8]  *See id.*  Thus, Defendant's motion for summary judgment should be granted with respect to this claim.

**Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

---

[8]Scaturo has averred that the South Carolina Department of Mental Health has no control over the housing units assigned to the SVPTP. [Doc. 23-3 ¶ 13.]  Pursuant to an agreement between the South Carolina Department of Mental Health and the South Carolina Department of Corrections, the SVPTP is housed in the Edisto and Congaree Units at the Broad River Correctional Facility.  [*Id.*]  The rooms in the Edisto Unit did not have cable or electrical outlets when the SVPTP was assigned to the unit, with the exception of seven rooms that are reserved for residents with medical equipment that must be plugged in throughout the day.  [*Id.* ¶¶ 12–13.]  Plaintiff was placed in a room on the Edisto Unit, which was the only housing unit available when he arrived at the SVPTP in 2007. [*Id.* ¶ 7.] Accordingly, Plaintiff has failed to provide any evidence tending to establish that any different treatment between Plaintiff and residents of the Congaree Unit was the result of intentional or purposeful discrimination.

Moreover, to the extent Plaintiff alleges an equal protection claim with respect to state prisoners being allowed to purchase a television, hot pot, and reading lamp, as stated, access to these items "is of no constitutional import."  *See Scott v. Edwards*, No. 8:07-2046-MBS, 2008 WL 2856958, at *4 (D.S.C. July 21, 2008) (finding no equal protection violation where plaintiff, a pretrial detainee, was not provided with a microwave but convicted inmates were provided with a microwave).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the

15

normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendant violated Plaintiff's constitutional rights. Therefore, Defendant is entitled to qualified immunity, and Defendant's motion for summary judgment should be granted.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

June 30, 2016
Greenville, South Carolina